**Hazel HOWE, Plaintiff,**

**v.**

**Madeline COMSTOCK, Pearl McKenny, and Lloyd T. Crane and William E. Crane, as Co-Executors of the Last Will and Testament of Mae R. Rockwith, Deceased, Defendants.**

**No. 1666.**

United States District Court
E. D. Michigan, N. D.
May 29, 1957.

Jerome Weadock, Saginaw, Mich., for plaintiff.

John F. Kottnauer, Saginaw, Mich., Floyd T. Fuss, Saginaw, Mich., Martin & Martin, Saginaw, Mich., of counsel, for defendant Pearl McKenny.

Lloyd T. Crane and William E. Crane, Saginaw, Mich., for themselves.

PICARD, District Judge.

Action for declaratory judgment to construe provisions of a will and to determine the respective rights of plaintiff and defendants thereunder.

Plaintiff, a citizen of California, is the only surviving child of the testatrix, while defendants, Pearl McKenny and Madeline Comstock, sister and niece respectively, are, after plaintiff, the next of kin. The other defendants, Lloyd T. Crane and William E. Crane, are co-executors under the will. All defendants are citizens of Michigan.

Jurisdiction of this court to determine plaintiff's and defendants' rights under decedent's will has also been questioned and briefs have been filed therein.

**654**

### Findings of Fact

The testatrix, Mae R. Rockwith, died January 16, 1956, leaving a will which has been proven and allowed by the Saginaw County Probate Court. In the Fifth through the Twelfth paragraphs thereof, testatrix named specific persons, among them plaintiff and defendants Pearl McKenny and Madeline Comstock, as legatees and devisees. In paragraph Fourteen, however, the testatrix indicated that she had "other property" of which the will made no disposition, but added that a codicil would be executed which would dispose of that property. Admittedly the testatrix never disposed of the "other property" nor did she execute any codicil, but died intestate as to all her property not disposed of by the will.

The controversy giving rise to this action really has its genesis in the Seventh paragraph of testatrix' will which reads as follows:

"Seventh: I have a daughter by my first husband whose present name is Mrs. Hazel Howe residing in Crescent City, in the State of California and I do therefore give and bequeath to her the sum of Five Hundred ($500.00) Dollars and I have fully considered this provision for my daughter and I am intentionally making no further provision for her out of my estate."

Defendants Pearl McKenny and Madeline Comstock contend that the above language sufficiently manifests an intent on the part of testatrix to bar plaintiff from inheriting any portion of the property not disposed of by the will. On the other hand, plaintiff claims that the above restriction applies only to taking under the will and that she, as the only surviving child, is entitled to all intestate property.

### Conclusions of Law

We first take up the question of jurisdiction.

Defendant, Pearl McKenny, in contesting the jurisdiction of this court states that the Probate Courts of this state have "exclusive jurisdiction" to construe wills.

For this, she to some extent, depends upon Raseman v. Raseman, 234 Mich. 237, 208 N.W. 35, 38, wherein the court stated:

"It is settled beyond peradventure that the probate court has exclusive jurisdiction in the settlement of estates and has the power to construe a will. * * * Having the jurisdiction to construe wills, its construction, where necessarily involved, must be final, unless appealed from."

But what the Supreme Court really said in that case was that Probate Courts have "exclusive jurisdiction in the settlement of estates" as well as the "power" to "construe a will". In other words, that court made a distinction between the Probate Court's "exclusiveness" in settlement of estates and its power "to construe a will". Plaintiff doesn't deny that the Probate Court has jurisdiction to construe this will but plaintiff does emphasize that this court has a concurrent jurisdiction "to construe a will". Furthermore, plaintiff insists that up to this very moment this court is the only court that has been asked "to construe" Mrs. Rockwith's will.

Plaintiff also quotes from Brooks v. Hargrave, 179 Mich. 136, 146 N.W. 325, 329, but here again the distinction is made between the "exclusiveness" of the Probate Court's power in settlement of an estate. Furthermore, the quotation also carries these significant words:

"It is only when other interests than those of the estate and the executor are involved that the chancery court assumes jurisdiction * * *."

Well, isn't that the case here?

So while we agree with defendant's statement that in Michigan Probate Courts may construe a will, a review of the Michigan cases forces us to reject her claim that the Probate Court has "exclusive jurisdiction". See Ferguson v. Patterson, 10 Cir., 191 F.2d 584; Bryne

v. Hume, 84 Mich. 185, 47 N.W. 679; Dean v. Mumford, 102 Mich. 510, 61 N. W. 7; Dudley v. Gates, 124 Mich. 440, 83 N.W. 97, 86 N.W. 959; Billings v. Marshall Furnace Co., 210 Mich. 1, 177 N.W. 222, 9 A.L.R. 1239; and Jones v. Harsha, 225 Mich. 416, 196 N.W. 624. Indeed, the Supreme Court of Michigan has expressly recognized the jurisdiction of Federal Courts to construe wills and grant other incidental relief, even though it might affect administration of the estate. It has also held that where the Federal Courts have acted the issue is res judicata, and thereafter the parties are estopped to bring a state court action for the same purpose. See Second National & Trust Co. of Saginaw Bank v. Reid, 304 Mich. 376, 8 N.W.2d 104. In that case the trustee filed a state court chancery bill asking construction of a will and upon petition of one of the beneficiaries showing diversity of citizenship, the case was removed to the United States District Court. Thereupon, the Federal Court construed the will and gave other relief. The case was appealed to the United States Court of Appeals for the Sixth Circuit, Van Auken v. Second National Bank & Trust Co. of Saginaw, Mich., 117 F.2d 938, which affirmed and certiorari to the latter from the Supreme Court of the United States was denied. 313 U.S. 593, 61 S.Ct. 1118, 85 L.Ed. 1547. Subsequently an attempt was made to attack the Federal Court proceedings in the state court on the grounds of fraud and lack of jurisdiction. The Michigan Supreme Court, in issuing writs of prohibition and mandamus preventing the lower court from entertaining the action, said at page 390 of 304 Mich., at page 109 of 8 N.W.2d—

"In the first suit a construction of the Eddy will was sought and, dependent upon it, the approval of the trustee's accounts. Mrs. Cleveland, after causing the removal of the case to the Federal courts, filed a cross bill making Mr. Eddy's widow and others cross-defendants. * * * Having failed in all phases of the litigation, Mrs. Cleveland undertook in the instant suit to litigate all over again questions that had been determined by the previous judgments. The principle of estoppel would apply in the fullest force if the questions decided in the first suit were not res adjudicata. The first suit resulted in numerous disputed questions being raised and many new parties, in addition to the trustee, being brought in. For that reason alone, if for no other, equity was a proper forum. Scripps v. Sweeney, 160 Mich. 148, 125 N.W. 72; Pungs v. Hilgendorf, 289 Mich. 46. *Equity had inherent jurisdiction over the construction of a will. If there was any uncertainty over the payment of moneys under a legacy, a court of equity was a proper forum in which to seek a construction.*" (Emphasis ours.)

In addition to the Michigan authorities above cited, the decisions of the Federal Courts also sustain our jurisdiction in the case at bar. See Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256; Brownell v. Leutz, D.C., 136 F.Supp. 783; Hinkley v. Art Students' League, 4 Cir., 37 F.2d 225; and Foster v. Carlin, 4 Cir., 200 F.2d 943.

We deem it unnecessary to extend the length of this opinion. Suffice to say that, while admission of a will to probate and the actual probating of an estate are in rem proceedings, an action for the construction of a will previously admitted to probate is a distinct and separate proceeding. See 95 C.J.S. Wills § 308, p. 105. In any event, the decisions above cited, both state and federal, we believe, sustain the jurisdiction of this court to entertain the matter now before it.

But those other questions involved seem to call for a two way decision, hinging upon whether the court in aiding it to determine the intention of the testatrix should have accepted testimony even to a limited extent.

Therefore we have decided to write two phases in this opinion—one without using such testimony, the other based to some extent on that testimony. And since the parties are now seemingly agreed that all the court needs to arrive at its conclusions is Mrs. Rockwith's will and such uncontested facts as the date it was signed and the date of testatrix' death, both of which already appeared in the pleadings, we are first deciding this case on the theory that no other testimony regarding matters pertaining to the intention of the testatrix was needed or taken.

### (A) Conclusions Based on Mrs. Rockwith's Will Alone

There are two principles of law agreed upon by counsel and which aid the court in this opinion.

■■ First, it is recognized that courts should give effect to the intentions of the testator (Hay v. Hay, 317 Mich. 370, 26 N.W.2d 908) if they possibly can; and second, if the court may do so without straining the usual line of the descent of property. Southgate v. Karp, 154 Mich. 697, 118 N.W. 600. Each one is interdependent upon the other because the courts may not surmise nor guess what the testator intended. Courts should from the language used be able to definitely conclude what the testator had decided to do by making the will he or she did.

Let us examine this will carefully.

■ When Mrs. Rockwith informed her attorneys in October 1955, just what she wanted to do, she apparently as of that day might have had some feeling of uncertainty about her daughter's (the plaintiff) rights or needs and we may conclude that as of that date she wasn't ready to give her daughter by will more than $500 from her estate. We are not informed as to the reason and, reason or not, she had a right to give her property to whomsoever she desired. In re Kramer's Estate, 324 Mich. 626, 37 N.W.2d 564; In re Livingston's Estate, 295 Mich. 637, 295 N.W. 343.

At the same time her will indicates that she knew she had some intestate property and having made bequests to both Madeline Comstock her niece, and Pearl McKenny, her sister, who will receive the un-willed property if plaintiff doesn't, she certainly also knew of the existence of both her sister and her niece. Now then—and we deem this important—she did not, at that time, although she could have, give the undisposed of property to any one in particular. So at this point there is as much evidence to guide one to a conclusion that Mrs. Rockwith did not intend that her undisposed of property should pass to either her sister or niece as there is that she did not intend it to go to her daughter, the plaintiff.

■■ As is common knowledge, testators often change the object of their beneficence, particularly when the person first eliminated from complete participation, is a blood relative, such as an only child. The facts show that Mrs. Rockwith knew that certain property had not been disposed of and for some reason or other she apparently was content. Furthermore, she is presumed to have intended that upon failure to dispose of this property by codicil, such property would be disposed of under the Michigan laws of inheritance. In re Baker's Estate, 161 Neb. 241, 72 N.W.2d 844; Southgate v. Karp, supra.

This, therefore, is not so much a question of whether Mrs. Rockwith had intended to disinherit her daughter with only $500 as it is a failure of one having property subject to inheritance and who has determined to make a will, or codicil thereto, some day in the future, but never does.

The great weight of Michigan authority is undoubtedly in favor of plaintiff. We do not agree with defendants' contention that the case of LaMere v. Jackson, 288 Mich. 99, 284 N.W. 659, controls but rather that this is akin to several decisions where the decedent for some reason or other might have wanted to limit a legatee to a specific amount of property under the will but did not.

Southgate v. Karp, supra; Cattell v. Evans, 301 Mich. 708, 4 N.W.2d 67; In re Martz's Estate, 318 Mich. 293, 28 N.W.2d 108. Furthermore, each case stands on its own merits and while the cases above cited are instances where the testator's desires were apparently more definitely enunciated than in the case at bar, still the Michigan Supreme Court held for the heir at law. See Southgate v. Karp, Cattell v. Evans and In re Martz's Estate, all supra.

In general all decisions in Michigan convey this conclusion, that while you must determine the intention of the testatrix where the residue is not actually disposed of,

"mere negative words in his will will not suffice to disinherit heirs, but there must be an actual disposition of the estate to some other person." Southgate v. Karp, supra [154 Mich. 697, 118 N.W. 602].

In the case of In re Martz's Estate, supra, the testator provided:

"I have intentionally omitted from this my last will and testament my daughter Margaret Martz Heineman, having already made ample provision for her by a trust agreement now in effect." [318 Mich. 293, 28 N.W.2d 109.]

The court held that even these words, which are much stronger than those in the case at bar, did not disinherit the daughter, Margaret Martz Heineman, from property that had not been distributed by the will. Cattell v. Evans, supra. There are no words in this will which disinherit Mrs Howe.

We cannot, therefore, arrive at the conclusion that Mrs. Rockwith intended her daughter to take nothing from the rest of her estate and only $500 as given by the will. Mrs. Rockwith could have accomplished this decision easily. On the contrary, it may have been that that natural love and affection a parent has for a child was being rekindled either because of advancing age or some other reason. In any event, she held back from making the final decision against her daughter.

### (B) Conclusions Based on Parol Testimony

While we felt that something in the parol evidence might aid us in arriving at the proper construction of Mrs. Rockwith's will, we took such testimony. Furthermore, we believe our conclusions are that parol evidence is admissible in determining the construction of a will even to the extent that testimony of attorney and client as evidenced in In re Loree's Estate, 158 Mich. 372, 122 N.W. 623, and Eicholtz v. Grunewald, 313 Mich. 666, 21 N.W.2d 914, is not privileged. The only real strength the testimony had here was to show that Mrs. Rockwith did not die immediately. She lived for three months—long enough to make any codicil she desired. In addition, during that time she was approached by her counsel, according to both their answer and testimony and she was urged to dispose of the property that she had not covered in her will. Why didn't she? Evidently because she had not made up her mind or was content to have it go to her daughter.

It is therefore stronger in favor of plaintiff than the construction based on Mrs. Rockwith's will alone.

Still whether considering such evidence or not, since under the decisions we must follow the law of inheritance, we hold that plaintiff must prevail.